IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

APOLONIO HERNANDEZ,

      Plaintiff,

vs.                                                                          No. 09-CV-0813 MV/LAM

CITY OF LAS CRUCES,
NEW MEXICO; and JEREMY STORY,
DANIEL LOPEZ, and JUSTIN DUNIVAN,
in their individual capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment

[Doc. 37].  The Court, having considered Defendants' Motion and corresponding Memorandum

in Support [Doc. 38], Plaintiff's Response in Opposition [Doc. 39] and corresponding

Memorandum in Support [Doc. 40], Defendant's Response in Support [Doc. 41], the relevant

law, and being otherwise fully informed, **FINDS** that the Motion shall be **GRANTED** with

respect to Defendant Daniel Lopez, and **FURTHER FINDS** that the Motion shall be

**GRANTED IN PART AND DENIED IN PART** with respect to Defendants the City of Las

Cruces, Jeremy Story, and Justin Dunivan.

## BACKGROUND

On August 15, 2008, Plaintiff was involved in a physical fight with Miguel Lopez at the

residence of Mr. Lopez's son, Daniel Lopez ("Defendant Lopez"), who is a police officer with

the Las Cruces Police Department.  In response to the fight, Defendant Lopez – who was off

duty at the time – arranged for a transport van to the hospital and then contacted his supervisor

with the police department, who directed him to contact the on-duty supervisor, Sergeant Justin

Dunivan ("Defendant Dunivan").  Defendant Dunivan went to the hospital and contacted Officer

Jeremy Story ("Defendant Story") to assist in the investigation.  Defendant Dunivan allowed

Defendant Lopez to remain at the hospital, but directed Defendant Story to conduct the

investigation.  Defendant Story discussed the incident with Defendant Lopez, and proceeded to

interview Miguel Lopez.  Although Defendant Lopez was aware that his father had a drinking

problem, had been in fights before, and had a criminal history, he did not convey this

information to Defendant Story.  He did, however, tell Defendant Story that according to Miguel

Lopez, Plaintiff was "kicking his ass" because his sons were law enforcement officers.  Doc. 39,

Ex. A at 6 (page 18, lines 18-20).[1]

Defendant Story interviewed Miguel Lopez, and smelled an odor of alcohol on his

breath.  Miguel Lopez informed Defendant Story that Plaintiff and Plaintiff's sons had attacked

him.  Defendant Story observed that Miguel Lopez had sustained lacerations on his head and

forearm, and one of his eyes was swollen shut.  He arranged for photographs to be taken of

Miguel Lopez's injuries.  *See* Doc. 38, Ex. I.

Defendant Story went to the residence where the fight had occurred, but was unable to

locate Plaintiff.  Defendant Story returned to the residence the following day and attempted to

locate witnesses to the fight.  Neighbors were either not present or were unwilling to talk to him.

He did speak to Plaintiff's son, who stated that he was not present at the residence nor involved

in any way in the altercation.  Defendant Story's visual inspection of Plaintiff's son confirmed

that he did not have any lacerations or injuries that would be consistent with having recently

been in a fight.  Defendant Story did not prepare a report of this contact to supplement the

---

[1] In addition to Defendant Lopez, Miguel Lopez has another son, Eric Lopez, who is an
officer with the Dona Ana County Sheriff's Department.

criminal complaint.

Defendant Story prepared a criminal complaint for submission to a state magistrate judge in which he stated that he had probable cause to believe that Plaintiff committed Aggravated Battery (No Great Bodily Harm) contrary to N.M. STAT. ANN. § 30-3-5A.  He did not research Miguel Lopez's criminal history before filing the complaint, nor did he again attempt to interview other witnesses, including Plaintiff's other son who was alleged to have been a participant.  As facts in support of the complaint, he listed the information he had gathered from his interview with Miguel Lopez as well as from hospital staff.  Examples of these alleged facts are: (1) Plaintiff and his two sons attacked Miguel Lopez; (2) Plaintiff stomped on Miguel Lopez's head, bit him, and kicked him; (3) Miguel Lopez claimed to have been fighting for his life; and (4) Miguel Lopez's right eye was completely swollen shut, his left eye was partially swollen, and he had bruising and swelling throughout his face.  Defendant Story further recorded his own observations of Miguel Lopez, including the bruising and swelling just described, additional bruises on his left side, and bite marks on his arms.

On August 18, 2008, a state magistrate judge signed the complaint.  Defendant Story prepared an arrest warrant and made contact with Plaintiff.  He arrived at Plaintiff's house with the arrest warrant in hand and interviewed him before advising him that he was under arrest.  Plaintiff immediately informed Defendant Story of his version of the events: Miguel Lopez attacked Plaintiff, who responded in self-defense.  After speaking with Plaintiff, Defendant Story arrested him.  At no point did Defendant Story administer *Miranda* warnings.

Defendant Story did not supplement his report with Plaintiff's version of the fight.  Due to its misdemeanor status, the District Attorney's office declined to prosecute the case, and Defendant Story prepared to prosecute it himself in magistrate court.  However, he missed the

jury selection due to the premature birth of his son, and the charges were dismissed.

Defendant Dunivan learned of the dismissal, and proceeded to authorize Defendant Story to refile the criminal complaint on April 7, 2009. At some point shortly prior to the refiling, Defendant Story learned that Plaintiff formally notified the Las Cruces Police Department of his intent to file a lawsuit under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act.

On August 4, 2009, Plaintiff was acquitted of Aggravated Battery. He commenced the instant lawsuit alleging false arrest, malicious prosecution, conspiracy, and due process violations under 42 U.S.C. § 1983.

### LEGAL STANDARD

The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To survive a motion for summary judgment where qualified immunity is at issue, Plaintiff must first show a violation of clearly established federal constitutional or statutory rights, and must next demonstrate "that a reasonable public official would have known that his or her challenged conduct was illegal." *Deutsch v. Jordan*, 618 F.3d 1093, 1099 (10th Cir. 2010) (citation and alteration omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808 (2009); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

If Plaintiff succeeds in carrying the two-part burden articulated above, the burden shifts

to Defendants, and their Motion becomes a traditional summary judgment motion.  *Medina v.*

*Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).  Summary judgment is appropriate "if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) (quoting FED. R. CIV.

P. 56(c)).  When applying this standard, the Court must examine the factual record in the light

most favorable to the nonmoving party.  *Belhomme v. Widnall*, 127 F.3d 1214, 1216 (10th Cir.

1997).

## DISCUSSION

Plaintiff alleges that Defendants falsely arrested him in violation of the Fourth

Amendment's guarantee of freedom from unreasonable seizures, and argues specifically that

they conspired to omit exculpatory information from the criminal complaint and manufactured

probable cause where none existed.  This allegation also forms the basis of Plaintiff's conspiracy

claim that Defendants formulated a plan to "arrest and prosecute [Plaintiff] at any cost."  Doc. 40

at 18.  Plaintiff further asserts claims under the Fourteenth Amendment's Due Process Clause,

alleging Defendants violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose

exculpatory evidence, and further alleging that Defendant Story violated *Miranda v. Arizona*,

384 U.S. 436 (1966) by filing to administer warnings before the commencement of custodial

interrogation.  Finally, Plaintiff asserts a claim for malicious abuse of process, arguing that

Defendants initiated criminal proceedings against him in order to accomplish an illegitimate

purpose.

Defendants assert qualified immunity as a defense to all of Plaintiff's claims.

Additionally, with respect to Plaintiff's false arrest and conspiracy claims, Defendants first argue

that Plaintiff cannot demonstrate an agreement between two or more people to commit an

unlawful act, and further argue that probable cause to arrest Plaintiff indeed existed, thus

defeating these claims entirely.  In the alternative, Defendants argue that their belief that

probable cause existed was reasonable, entitling them to qualified immunity.  Defendants next

argue that "no rational argument" can support Plaintiff's due process claim stemming from

Officer Story's failure to administer *Miranda* warnings, because such failure does not trigger

liability under § 1983.  Doc. 38 at 10-11.  They further argue that Plaintiff cannot prevail on his

*Brady* claim because he prevailed at trial; a *Brady* violation occurs when the prosecution's

failure to disclose favorable evidence creates a "reasonable probability that, had the evidence

been disclosed to the defense, *the result of the proceeding would have been different*."  *Kyles v.*

*Whitley*, 514 U.S. 419, 433 (1995) (citations omitted; emphasis added).  Finally, Defendants

argue that Plaintiff's malicious prosecution claim fails for the same reason as his false arrest

claim, as this claim requires that he prove that Defendants had no probable cause to arrest him.

I.      **Defendant Daniel Lopez**

        Prior to analyzing each claim individually, the Court must conclude that Defendant

Lopez, whose only role in the investigation was to speak to Defendant Story upon his arrival at

the hospital, cannot be held liable for any of Plaintiff's asserted claims.  Although Plaintiff has

established that Defendant Lopez omitted certain information about Miguel Lopez when he

summarized the incident to Defendant Story, he has failed to adequately link this omission to

Plaintiff's arrest and/or prosecution.  As set forth below, the Court will grant all Defendants

summary judgment on Plaintiff's false arrest, conspiracy, and due process claims, leaving only

Plaintiff's malicious prosecution claim.  Certainly, Defendant Lopez's failure to inform

6

Defendant Story of Miguel Lopez's criminal history and alcohol issues is sufficiently attenuated from Plaintiff's ultimate prosecution such that liability cannot attach here.

## II.      False Arrest and Conspiracy Claims

Plaintiff's claims for false arrest and conspiracy both center around the same factual allegation: that Defendants conspired to arrest him without probable cause.  When a Section 1983 action alleges false arrest, "the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff."  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007) (citing *Atwater v. Lago Vista*, 532 U.S. 318, 322 (2001)).   Accordingly, if Defendant Story had probable cause to arrest Plaintiff, or had a reasonable belief that probable cause existed, Plaintiff cannot meet his burden under the doctrine of qualified immunity to show an unreasonable violation of his clearly established constitutional right to be free from unreasonable seizures.  *See Hunter v. Bryant*, 502 U.S. 224 (1991) ("[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity" (citation omitted)).

Probable cause is present when "facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Tanberg v. Sholtis*, 401 F.3d 1151, 1159 (10th Cir. 2005).  Probable cause "only requires a probability of criminal activity, not a prima facie showing of such activity," and the existence of probable cause is determined "from the totality of the circumstances taking into account both inculpatory as well as exculpatory evidence."  *Wilder*, 490 F.3d at 813-14.

The offense for which Plaintiff was arrested, Aggravated Battery, is defined as "the unlawful touching or application of force to the person of another with intent to injure that person or another."  N.M. STAT. ANN. § 30-3-5A.  The undisputed facts establish that Plaintiff

was involved in a fight with Miguel Lopez, and Miguel Lopez went to the hospital for treatment

of his injuries.  While in the hospital, Miguel Lopez told Defendant Story that Plaintiff had

attacked him, and he was fighting Plaintiff for his life.  Defendant Story observed that Miguel

Lopez had sustained lacerations on his head and forearm, one of his eyes was swollen shut, and

the other eye was swollen partially shut.  The photographic exhibits corroborate this observation,

and Plaintiff has advanced no evidence to call into question the severity of Miguel Lopez's

injuries.

Defendant Story's observations at the hospital – and the corroborating photographic

evidence – strongly suggest that he had probable cause to conclude that Plaintiff indeed

committed aggravated battery.  Rather than immediately filing a criminal complaint, Defendant

Story attempted to interview witnesses to the altercation, but was unsuccessful.  Plaintiff argues

that the probable cause calculus imposes a duty upon the arresting officers to investigate

potential exculpatory information, and specifically argues that Miguel Lopez's criminal history –

of which Defendant Lopez was aware and failed to disclose to his co-defendants – would have

exculpated Plaintiff so as to vitiate the existence of probable cause.

Plaintiff has pointed to no authority suggesting that Defendant Story was obligated to

investigate Miguel Lopez's criminal history or continue returning to the neighborhood of the

fight in the hopes of finally making contact with someone who witnessed it.  Indeed, the relevant

authority would not support such a proposition.  *See Ahlers v. Schebil*, 188 F.3d 365, 371 (6th

Cir. 1999) ("[o]nce probable cause is established, an officer is under no duty to investigate

further or to look for additional evidence which may exculpate the accused"); *Schertz v.*

*Waupaca County*, 875 F.2d 578, 583 (7th Cir. 1989) ("it appears that once police officers have

discovered sufficient facts to establish probable cause, they have no constitutional obligation to

conduct any further investigation in the hopes of uncovering potentially exculpatory evidence");

*Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) (police officer cannot ignore

available exculpatory information, but he "is not required to explore and eliminate every

theoretically plausible claim of innocence before making an arrest"); *Orsatti v. New Jersey State*

*Police*, 71 F.3d 480, 484 (3d Cir. 1995) (when police officers assert qualified immunity defense

to unlawful arrest claim, court should focus "on the information the officers had available to

them, not on whether the information resulted from exemplary police work").  This authority

only supports a conclusion that *some* federal circuits require officers to investigate exculpatory

information that is easily available to them, not that Plaintiff had a clearly established right to

such an investigation.

       The logic of Plaintiff's argument that a criminal history search of the victim would have

negated probable cause is questionable; the Court would hesitate to agree that the fact that

someone has a criminal history suggests that they were somehow at fault for their visible serious

injuries resulting from a fight.  It would make for poor policy to require officers responding to a

report of a crime to distract from their investigation by running a criminal history check on the

victim.  Regardless, the law on this subject is certainly not so "clearly established" so as to

defeat Defendants' motion for summary judgment on qualified immunity grounds.  Given the

fact that Defendant Dunivan took steps to remove Defendant Lopez from the investigation

(rendering his account of Miguel Lopez's criminal history less readily available), the lack of

authority clearly establishing that a victim's criminal history constitutes exculpatory

information, and the further lack of authority clearly establishing that Defendants were under

any duty to search for exculpatory information, Defendants are entitled to qualified immunity on

Plaintiff's false arrest and conspiracy claims.[2]

## III.    Due Process Claims

The landmark Supreme Court cases of *Miranda v. Arizona*, 384 U.S. 436 (1966) and

*Brady v. Maryland*, 373 U.S. 83 (1963) are undisputably "clearly established" for purposes of

Defendants' claim to qualified immunity.  However, the Court declines to conduct a complete

qualified immunity analysis, as both of these claims fail as a matter of substantive law.

*Bennet v. Passic*, 545 F.2d 1260 (10th Cir. 1976) unambiguously resolves Plaintiff's

*Miranda* claim in favor of Defendants.  There, the Tenth Circuit affirmed the district court's

dismissal of a § 1983 plaintiff's complaint under circumstances that were nearly identical to the

pertinent circumstances of the instant case.  With respect to the plaintiff's *Miranda* claim, which

stemmed from the arresting officer's failure to administer warnings prior to the plaintiff's arrest,

the Tenth Circuit held:

> Even assuming that Bennett's confession should have been excluded from the
> evidence at his trial, the court cannot find that any rational argument can be made in
> support of this civil rights claim for damages . . . .  The *Miranda* decision does not
> even suggest that police officers who fail to advise an arrested person of his rights
> are subject to civil liability; it requires, at most, only that any confession made in the
> absence of such advice of rights be excluded from evidence.  No rational argument
> can be made in support of the notion that the failure to give *Miranda* warnings
> subjects a police officer to liability under the Civil Rights Act.

*Id*. at 1263.  The Tenth Circuit affirmed this principle in *Marshall v. Columbia Lea Regional*

_____

[2] The Court further notes that Plaintiff has advanced no evidence to suggest that
Defendants made the requisite unlawful agreement to form the basis of a conspiracy claim.  *See*
*Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010) ("[A] federal conspiracy action
brought under [§ 1983] requires at least a combination of two or more persons acting in concert
and an allegation of a meeting of the minds, an agreement among the defendants, or a general
conspiratorial objective.").  In fact, Plaintiff's allegation that Defendant Lopez "left out vital,
important information" in his discussions with the other defendants, Doc. 28 at 3, undermines his
argument that Defendants engaged in a conspiracy.

*Hosp.*, 345 F.3d 1157, 1165 n.6 (10th Cir. 2003) ("violations of *Miranda* rights do not subject police officers to liability under § 1983").

Plaintiff's *Brady* claim also fails as a matter of law, as the jury acquitted him of aggravated battery.  To establish a *Brady* violation, Plaintiff must prove three elements: (1) the prosecution withheld evidence, (2) the evidence at issue was favorable to him, and (3) the suppressed evidence was material.  *Douglas v. Workman*, 560 F.3d 1156, 1173 (10th Cir. 2009) (citations omitted).  Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  The Supreme Court in *Kyles* further framed the materiality inquiry as whether, absent the suppressed evidence, the defendant received a fair trial.  *Id*. at 434.  In *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999), the Tenth Circuit expressly held in the *Brady* context that "[r]egardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial."

Plaintiff has offered no evidence that distinguishes his case from these binding holdings of the Tenth Circuit.  Accordingly, Defendants are entitled to summary judgment on Plaintiff's Due Process claims under the Fourteenth Amendment.

## IV.   Malicious Prosecution Claim

Central to a claim of malicious prosecution under § 1983 is an allegation that the defendants had no probable cause to support the initial arrest, the plaintiff's continued confinement, or his continued prosecution.  *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).  Under the doctrine of qualified immunity, Defendants here are entitled to relief if they possessed a reasonable belief that probable cause existed.  In the instant case, the Court found

that Defendants met this standard with respect to Plaintiff's initial arrest.  The question remains

whether Defendants either had probable cause, or had a reasonable belief that they had probable

cause, to continue their prosecution of Plaintiff.

Tenth Circuit case law presents some ambiguity as to the remaining elements of a

malicious prosecution claim under § 1983.  In 2008, the court listed these elements as follows:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the
> original action terminated in favor of the plaintiff; (3) no probable cause supported
> the original arrest, continued confinement, or prosecution; (4) the defendant acted
> with malice; and (5) the plaintiff sustained damages.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).  The court cited *Novitsky v. City of*

*Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007), which lists precisely the same common law

elements of malicious prosecution as being "applicable in a § 1983 claim."  However, in

*Novitsky*, the court further noted: "[W]hen addressing § 1983 malicious prosecution claims, we

use the common law elements of malicious prosecution as the starting point of our analysis;

however, the ultimate question is whether plaintiff has proven the deprivation of a constitutional

right."  *Id*. at 1257 (quotation omitted).  Although both these cases relied on *Pierce v. Gilchrist*,

359 F.3d 1279 (10th Cir. 2004), which also listed the same elements of *common law* malicious

prosecution, the court in *Pierce* stated in a footnote: "Neither party has questioned the

applicability of malice as an element of a § 1983 claim, and we therefore have no occasion to

address the issue."  *Id*. at 1297 n.12.

This portion of *Pierce* would suggest that the law is unsettled as to whether or not a

§ 1983 plaintiff must prove malice as an element of a malicious prosecution claim.  However,

the very footnote the court composed in *Pierce* cites authority strongly suggesting that some

showing of malice or bad faith is indeed required.  *See id*. (citing *Franks v. Delaware*, 438 U.S.

12

154, 155-56 (1978), which employed a standard of "knowingly and intentionally, or with

reckless disregard for the truth," falsifying or omitting evidence, and *Arizona v. Youngblood*, 488

U.S. 51, 55 (1988), which required a showing of "bad faith" in the context of due process

challenge to failure to preserve evidence). This Court reads *Pierce*, in combination with the

Tenth Circuit's subsequent decisions in *Novitsky* and *Wilkins*, as requiring that it look to the five

common law elements of malicious prosecution – including malice – as a starting point.

However, the ultimate inquiry is whether Plaintiff can establish that Defendants violated his

constitutional rights.

There is no question that Defendants caused Plaintiff's arrest as well as his continued

prosecution. As the District Attorney declined to prosecute the case due to its misdemeanor

status, Defendants were entirely responsible for the case's continued prosecution, including the

decision to re-file charges after Defendant Story failed to appear for the initial trial. There can

also be no dispute that the proceedings ended in Plaintiff's favor, as the jury acquitted him. The

issues are therefore whether or not Defendants had probable cause to support Plaintiff's

continued prosecution, whether or not they acted with malice, and whether or not Plaintiff

sustained damages.

The undisputed evidence establishes that Defendant Story planned to prosecute

Plaintiff's criminal case himself, but had a family emergency that prevented him from appearing

for jury selection. Plaintiff was arrested on August 18, 2008, and jury selection for his original

trial was set to commence on January 7, 2009. Presumably, during those four-and-a-half

months, Defendant Story prepared for trial and conducted some level of investigation to

supplement the investigation he conducted in the days leading up to Plaintiff's arrest. This raises

a genuine issue of material fact with respect to whether or not Defendants had probable cause to

continue the prosecution.  The law is clearly established that a prosecution must be supported by

probable cause.  *Bordenkircher v. Hayes*, 434 U.S. 357, 364  (1978) ("In our system, so long as

the prosecutor has probable cause to believe that the accused committed an offense defined by

statute, the decision whether or not to prosecute . . .  generally rests entirely in his discretion.").

Therefore, it would be an unreasonable violation of Plaintiff's constitutional rights if Defendants

were to have knowingly continued the prosecution absent probable cause, or unreasonably

concluded that probable cause existed where in fact it did not.

In addition, the evidence establishes that on March 30, 2009, just eight days before

Defendant Story re-filed the complaint with Defendant Dunivan's authorization, Plaintiff

notified Defendants of his intent to file a civil rights lawsuit.  Doc. 40, Ex. 3.  The notice alleges

that the investigating officers did not properly investigate the fight with Miguel Lopez, and this

incomplete investigation led to the authorization of Plaintiff's arrest.  Defendants state in a

conclusory fashion that "the decision to re-file charges cannot be considered malicious

prosecution . . . [because] nothing had changed with respect to the evidence of Plaintiff's

involvement and the extent of Miguel Lopez's injuries that would have altered the probable

cause analysis between the first and second filing[s]."  Doc. 38 at 10.  The Court cannot so

conclude at this stage.  Although it was reasonable for Defendant Story to arrest Plaintiff just

days after the fight based on the information he had at that time, the parties' conflicting factual

assertions regarding who was at fault for the altercation render it entirely possible that, at the

time of the re-filing, Defendants indeed possessed substantial exculpatory information regarding

Plaintiff.  Such information could have vitiated probable cause such that the continued

prosecution amounted to a violation of Plaintiff's rights.  This evidence leaves genuine factual

issues as to whether or not Defendants acted with malice in re-filing the charges.

14

Finally, Plaintiff has filed an affidavit in which he details the damages he suffered

resulting from Defendants' conduct.  Doc. 44.  Plaintiff's sworn affidavit states: (1) he posted a

$500 bond to secure his release from jail in August of 2008; (2) his employer placed him on

administrative leave without pay as a result of the arrest; (3) his criminal case cost him $10,000

in legal fees; (4) his employer eventually demoted him to a lower position in which he received a

lesser rate of pay; (5) due to a variety of factors, including his embarrassment and humiliation

resulting from the demotion, he resigned and took early retirement; and (6) as a result of his

early retirement, he has lost over $112,000 to date.  While it is not clear whether all of these

damages would be recoverable, the evidence presented leaves genuine issues of material fact as

to the question of damages.

Accordingly, the evidence before the court is insufficient at this juncture to resolve

Plaintiff's malicious prosecution claim by way of Defendants' summary judgment motion.  The

Court is unable to conclude that Defendants reasonably believed they had probable cause to

continue Plaintiff's prosecution, barring a grant of summary judgment on qualified immunity

grounds.  Moreover, with respect to all elements of a claim of malicious prosecution, the Court

encounters genuine issues of material fact that would be appropriately developed at trial.

## CONCLUSION

For the reasons set forth above, Defendant Daniel Lopez is entitled to qualified immunity

on all of Plaintiff's claims.  Accordingly, Defendants' Motion for Summary Judgment shall be

**GRANTED** with respect to Defendant Lopez.

Defendants Jeremy Story and Justin Dunivan are entitled to qualified immunity on

Plaintiff's claims of false arrest, conspiracy, and Fourteenth Amendment due process violations.

These officers' entitlement to qualified immunity further entitles Defendant, the City of Las

Cruces, to summary judgment on these claims.  Accordingly, Defendants' Motion for Summary Judgment [Doc. 37] shall be **GRANTED** with respect to these claims.  However, the record presents genuine issues of material fact with respect to Plaintiff's malicious prosecution claim, and summary judgment on this claim shall be **DENIED** with respect to Defendants the City of Las Cruces, Jeremy Story, and Justin Dunivan.


        Dated: this 31st  day of March, 2011

                                                              _____
                                                              MARTHA VÁZQUEZ
                                                              UNITED STATES DISTRICT JUDGE


*Attorneys for Plaintiff:*
Mario A. Esparza
Duane A. Baker

*Attorneys for Defendants:*
David P. Lutz
Harry Connelly
William L. Lutz

16